The PEOPLE of the State of Colorado, Petitioner–Appellee,

In the Interest of T.B. and M.B., Children, and Concerning T.B., Respondent–Appellant.

No. 99CA1605.

Colorado Court of Appeals, Div. II.

Sept. 14, 2000.

Bob D. Slough, County Attorney, Cortez, Colorado, for Petitioner–Appellee.

Nancy Agro, Guardian Ad Litem.

Stanley M. Morris, Cortez, Colorado, for Respondent–Appellant.

Opinion by Judge PLANK.

Mother, T.B., appeals a trial court judgment terminating her parental rights with respect to children T.B. and M.B. We affirm.

Mother was a victim of physical, sexual, and emotional abuse as a child and has a long history of drug abuse, significant mental illness, and repeated involvement in abusive relationships. On several occasions she has been arrested for and convicted of various offenses.

In early 1997, mother was terminated from a substance abuse treatment program after an incident of alleged child abuse. As a result of that incident, the Montezuma County Department of Social Services initiated an action in dependency and neglect. An order deferring adjudication was entered, and the children were placed in foster care. A treatment program was developed and modified numerous times to address mother's needs, with the goal of reuniting her with the children.

During the course of the treatment plans, mother violated the terms of her probation by leaving a residential drug treatment program without permission and failing a drug test. Upon revocation of her probation, she was sentenced to jail and then community corrections.

When the treatment plans proved unsuccessful, the trial court revoked the deferred adjudication and found the children to be dependent and neglected. Subsequently, following a hearing, the court terminated mother's parental rights.

The court found that the treatment plan had been appropriate to the mother's and the children's particular circumstances but had not been successful; that the children had resided almost exclusively in foster care since May 1997; that although mother loved the children, her personality disorders caused inappropriate behavior on her part and there

was a high likelihood that such behavior would continue; that mother was unfit and that her unfitness was unlikely to change within a reasonable time; and that her unfitness was manifested by excessive physical punishment of the children, excessive use of controlled substances, reckless disregard for the safety and well-being of the children, repeated criminal convictions, and other poor decisions that were not in the best interests of the children.

## I.

■ Mother contends that the trial court erred as a matter of law by not properly considering the Americans With Disabilities Act (ADA), 42 U.S.C. § 12101, et seq. (2000), in deciding to terminate her parental rights. We disagree.

Mother argues that she is disabled because of her prior drug usage and that the ADA therefore precludes, or at least limits, the trial court's authority to terminate her parental rights. The applicability of the ADA to the termination of parental rights is a matter of first impression in Colorado.

■ Parents have a constitutional interest, under the Fourteenth Amendment, in raising their children. *Prince v. Massachusetts*, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944). However, the rights of parents may be limited when it appears their decisions or actions will jeopardize the health or safety of their children. *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972).

■ When the welfare of a child is significantly threatened, the state may terminate parental rights. Section 19–3–604, C.R.S. 2000. Because of the important liberty interest parents have in raising their children, a termination proceeding must provide fundamentally fair procedures. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Colorado's statutory scheme for termination of parental rights provides such procedures and focuses on reunification of parents and children as its primary goal. *People in Interest of A.M.D.*, 648 P.2d 625 (Colo.1982).

The ADA is intended to "assure equality of opportunity, full participation, independent living, and economic self-sufficiency" to persons with disabilities. 42 U.S.C. § 12101(a)(8) (2000). To achieve that goal, Title II of the ADA in 42 U.S.C. § 12132 (2000) provides, as pertinent here, that:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

Because the applicability of the ADA to termination of parental rights proceedings has not been decided in Colorado, we look to other states for guidance. The majority of appellate courts that have considered the question have ruled, on various grounds, that the ADA does not provide a defense to a termination proceeding. *See J.T. v. Arkansas Dept. of Human Services*, 329 Ark. 243, 947 S.W.2d 761 (1997); *In re Antony B.*, 54 Conn.App. 463, 735 A.2d 893 (1999); *Stone v. Daviess County Division of Children & Family Services*, 656 N.E.2d 824 (Ind.App. 1995); *State ex rel. B.K.F.*, 704 So.2d 314 (La.App.1997); *In re Terry*, 240 Mich.App. 14, 610 N.W.2d 563 (2000); *In re A.P.*, 728 A.2d 375 (Pa.Super.1999); *In re B.S.*, 166 Vt. 345, 693 A.2d 716 (1997); *In re Torrance*, 187 Wis.2d 10, 522 N.W.2d 243 (App.1994). At least one court has decided that the ADA may be an affirmative defense to a termination proceeding, though the court ruled that the defense had been waived by the failure to plead it. *See In the Interest of C.M.*, 996 S.W.2d 269 (Tex.App.1999). Some courts have avoided reaching the issue of whether the ADA could be a defense by finding on the facts that the state agency, by providing services designed to meet the parent's special needs, had met any obligation that the ADA might impose. *See In Interest of C.M.*, 526 N.W.2d 562 (Iowa App.1994); *In re Angel B.*, 659 A.2d 277 (Me.1995); *In re Welfare of A.J.R.*, 78 Wash.App. 222, 896 P.2d 1298, *cert. denied*, 127 Wash.2d 1025, 904 P.2d 1157 (1995).

■ We agree with the majority and hold that the ADA cannot be raised as a defense to a termination of parental rights proceeding. The proper focus of such a proceeding is the welfare of the child. Section 19–3–604(3), C.R.S.2000. Regardless of the special needs or restricted capabilities of the

parent, the child is entitled to at least a minimum level of parental care. *Stone v. Daviess County Division of Children & Family Services, supra.* Although the Department of Human Services is a public entity and thus is subject to the ADA, *see* 42 U.S.C. § 12131 (2000), nothing in the ADA suggests that a violation of the statute would interfere with the right of the state to terminate parental rights. To allow the provisions of the ADA to constitute a defense to termination proceedings would improperly elevate the rights of the parent above those of the child. *See In re B.S., supra.*

Because an alleged ADA violation cannot be a defense to a termination of parental rights proceeding, mother's claim that the trial court erred by not considering the ADA must fail.

The judgment terminating mother's parental rights is affirmed.

Justice ERICKSON * and Judge PIERCE * concur.